UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   6/20/16
```

--------------------------------------------------------------------- X

:

DANIEL CORTES et al.,                              :

:

Plaintiffs,               :          15 Civ. 5680 (PAE)

:

:          OPINION & ORDER

-v-                            :

:

NEW CREATORS, INC. et al.,                         :

:

Defendants.               :

:

--------------------------------------------------------------------- X

PAUL A. ENGELMAYER, District Judge:

On April 11, 2016, the parties submitted an application for approval of a proposed

settlement agreement in this Fair Labor Standards Act ("FLSA") action.  Dkts. 71–72.  The

proposed settlement is between plaintiffs Daniel Cortes ("Cortes"), Gildardo Ramirez Galindo

("Ramirez"), Yoshitomo Kono ("Kono"), Takahashi Takano ("Takano"), and Jose Noe Ajtzalan

Perechu ("Noel"; collectively, "plaintiffs") and defendants Kenji Takahashi ("Mr. Takahashi")

and New Creators, Inc. d/b/a Sushi Sasabune of New York ("New Creators") (collectively,

"defendants"), and Mr. Takahashi's wife, Nami Takahashi ("Mrs. Takahashi").

The parties' application contained a joint letter, Dkt. 72 ("Letter"); the proposed

agreement, Dkt. 71 ("Agmt."); and the proof of claims that each plaintiff filed in New Creators'

pending bankruptcy proceeding (the "bankruptcy matter"), Dkt. 72, Ex. 1.  Plaintiffs' counsel

also submitted for the Court's *in camera* review a declaration regarding its request for attorneys'

fees and costs ("Rostami Decl."), along with counsel's billing records (the "Invoice"), and an

invoice ("Bankruptcy Invoice") for the services performed by outside counsel which plaintiffs'

counsel retained to provide legal services to plaintiffs in connection with the bankruptcy matter.

On May 19, 2016, the Court declined to approve the agreement because it contained an overbroad general release provision. *See* Dkt. 74. On May 25, 2016, the parties submitted an amendment to the agreement (the "Amendment"), which limits the release provision to the claims at issue in this action. Dkt. 75, Ex. 1 ("Am."). The Court herein refers to the original agreement, as modified by the Amendment, as the "Agreement."

For the reasons that follow, the Court now approves the Agreement, as amended.

## I.    Background

At various times between 2006 and 2015, plaintiffs worked as servers, kitchen workers, and/or sushi chefs at Sushi Sasabune of New York ("Sasabune"), located at 401 East 73rd Street, New York, NY. Dkt. 59 ("SAC"), ¶¶ 2–6, 15.[1] At all relevant times, Mr. Takahashi was Sasabune's owner, operator, and manager. *Id.* ¶ 16.

On July 20, 2015, Cortes, Kono, and Ramirez brought this action on behalf of themselves and all persons similarly situated. Dkt. 1. On September 14, 2015, defendants moved to dismiss the complaint. Dkt. 15. On October 7, 2015, Cortes, Kono, and Ramirez filed an amended complaint. Dkt. 20. On October 30, 2015, the Court stayed this case as to New Creators in light of its pending bankruptcy proceeding. Dkt. 39.

On November 12, 2015, the Court granted collective certification for a class of all employees who worked as sushi chefs, servers, and/or kitchen workers at Sasabune at any point during the preceding three years. Dkt. 52, *reported at Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2015 WL 7076009 (S.D.N.Y. Nov. 12, 2015). Takano and Noel later opted into this action. SAC ¶ 30.

---

[1] Cortes was employed as a server and kitchen worker, Kono as a server, Takano as a sushi chef, and Ramirez and Noel as kitchen workers. Letter, at 1.

On January 12, 2016, plaintiffs filed the Second Amended Complaint ("SAC").  Dkt. 59.
All plaintiffs brought claims for unpaid overtime compensation under the FLSA and NYLL; and
for unpaid spread-of-hours payments and failure to provide proper and accurate pay stubs under
the NYLL.  SAC ¶¶ 167–76, 184–226.  Cortes, Kono, and Takono brought claims for failure to
pay gratuities under the NYLL.  *Id.* ¶¶ 177–83.  Cortes and Kono also brought claims for
unlawful deductions under the NYLL.  *Id.* ¶¶ 227–32.  Plaintiffs sought (1) recovery of all
unpaid wages, payments, and gratuities, with pre- and post-judgment interest; (2) liquidated
damages under the FLSA and NYLL; and (3) attorneys' fees and costs.  *Id.* at 72–73.

Under the Agreement, defendants are to pay plaintiffs a total of $675,000, comprised of
(less taxes withheld for each plaintiff) $174,478.51 to Cortes; $113,589.89 to Kono; $63,799.37
to Takano; $52,086.40 to Ramirez; $46,045.83 to Noel; and $225,000 to plaintiffs' counsel.
Agmt. ¶¶ 1(a), (b).  In addition, the Agreement provides that: (1) Mr. Takahashi is to provide
plaintiffs with a confession of judgment in the amount of $850,000, with interest at 9% per
annum, as security for the performance of his obligations under the Agreement, *id.* ¶ 1(d); (2)
Mrs. Takahashi is to provide plaintiffs with a guarantee of payment of the settlement amount and
a confession of judgment of $675,000, *id.* ¶ 1(e); and (3) plaintiffs are to be awarded an allowed
general unsecured claim in the amount of $1.1 million in the bankruptcy matter, *id.* ¶ 3.

In exchange, plaintiffs are to (1) release Mr. and Mrs. Takahashi and New Creators from
all claims arising out of or connected to their claims in this lawsuit, Am. ¶ 1; (2) vote in favor of
any plan proposed by New Creators in the bankruptcy matter, as long as such plan provides for
payment to plaintiffs pursuant to the Agreement, Agmt. ¶ 14; and (3) forego any distribution in
the bankruptcy matter except for the payments received pursuant to the Agreement, *id.* ¶ 2.  The
Agreement also contains a non-disparagement provision that prevents plaintiffs from making any

3

disparaging statements about defendants' business, except for truthful statements about plaintiffs' experience litigating this case. *Id*. ¶ 6.

## II.      Discussion

### A.      Approval of Settlement Agreement

Under the FLSA, any employer that violates the requirement to pay minimum or overtime wages "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 200 (2d Cir. 2015). Rather, the parties must satisfy the Court that their agreement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, No. 15 Civ. 3068 (WHP), 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

Factors that weigh against settlement approval "include the following: (1) 'the presence of other employees situated similarly to the claimant'; (2) 'a likelihood that the claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others

4

in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'"  *Id.* at 336 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

Having considered these factors, the Court finds they support approval of the Agreement.

The settlement amount to be recovered by each plaintiff, net of attorneys' fees, constitutes a substantial proportion of the maximum actual damages that each plaintiff could recover if he were to succeed at trial: for Cortes, 42.46%; for Kono, 43.15%; for Takano, 23.9%; for Ramirez, 64.6%; and for Noel, 64.34%.  *See* Letter, at 3; *id.*, Ex. 1, at 4, 8, 12, 16, 20.[2]  Of course, these amounts constitute a much smaller proportion of the total possible damages that each plaintiff could recover if he were to also receive full liquidated damages and prejudgment interest: for Cortes, 20.7%; for Kono, 21.2%; for Takano, 11.3%; for Ramirez, 30.9%; and for Noel, 32.6%.[3]  *See id.*  However, the range of possible recovery is only one factor relevant to settlement approval.  *See Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15 Civ. 112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015) (approving settlement where "plaintiffs' recovery [would] be a tiny fraction of their potential recovery at trial" because other factors favored approval).  The others strongly favor approval here.

---

[2] The parties explain in their joint letter that the disparities in these percentages reflect the heightened litigation risks and difficulties of proof borne by the three plaintiffs who have asserted claims for unpaid tips.  *See* Letter, at 3.

[3] These percentages are overly conservative, as it is unlikely that the Court would permit cumulative recovery of liquidated damages under both the FLSA and the NYLL.  *See Hernandez v. JRPAC Inc.*, 14 Civ. 4176 (PAE), Dkt. 84, at 70 (S.D.N.Y. June 9, 2016) (holding that "a cumulative award of liquidated damages would amount to an impermissible double recovery") (collecting cases).

First, the settlement allows the parties to avoid additional litigation expense.  The parties
have already completed paper discovery; the settlement permits them to circumvent the costs of
depositions, expert discovery, further motion practice, and potentially trial.  *See* Letter, at 3.

Second, plaintiffs would face substantial litigation risks if they proceeded to trial.
Defendants dispute the hours plaintiffs worked and the extent to which they were paid gratuities.
*See id.*  Because defendants have not preserved records of hours worked or tips collected or paid,
these would have been contested issues.  *Id.*; *see Penafiel*, 2015 WL 7736551, at *2 (noting that
where "neither party was able to produce records reflecting the wages plaintiffs earned or the
hours they worked, . . . plaintiffs, as the parties bearing the burden of proof, may have found it
difficult to establish the full scope of their claims" at trial).  For example, the method of tip
calculation used to fashion the proposed settlement would, at trial, have been challenged by
defendants, both as to the percentage of revenue used to determine the total unpaid tips and to the
number of tip-eligible employees who would share the "tip pool."  Letter, at 3.  Accordingly, the
total tips ultimately awarded to Cortes, Kono, and Takano—a substantial portion of each's
anticipated recovery—might have been pared significantly.  *Id.*  Additionally, evidence might
reveal that sushi chef Takano received fewer tips than did servers.  *Id.*

More significantly, plaintiffs have serious concerns about collectability, which "militates
in favor of finding a settlement reasonable."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d
362, 365 (S.D.N.Y. 2013).  In light of defendants' precarious financial condition, particularly
New Creators' pending bankruptcy proceeding, there is a substantial risk that any judgment
plaintiffs might obtain at trial would prove uncollectable.  *See* Letter, at 4.  By contrast, the
Agreement—which provides for prompt payment of the settlement award, requires Mr. and Mrs.
Takahashi to provide plaintiffs with confessions of judgment, and requires Mrs. Takahashi to

provide plaintiffs with a guarantee for full payment—contains significant safeguards to ensure recovery.  *See id*; *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of settlement agreement, which "[g]uaranteed recovery from the other two defendants in the event that [one] prove[d] unable to pay the entire settlement amount").

As to the last two *Wolinsky* factors, there are no signs of fraud or collusion, and it is clear that the settlement was the product of arms'-length negotiations by experienced counsel.  Both parties have been represented by able counsel, and the settlement was reached following the exchange of paper discovery, which surely informed the parties as to the strengths and weaknesses of their positions.  *See id.* (affirming that "[r]espective counsel have reviewed and assessed all available information and have engaged in extensive negotiations to arrive at a resolution that reasonably addresses the concerns of all parties").  And, because plaintiffs no longer work for defendants, there is little cause for concern that defendants used improper leverage to secure settlement.  *See Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the defendant").

Additionally, no factor that weighs against settlement approval appears present here.  First, the Court is not aware of other employees in the same position as plaintiffs.  Notice of this lawsuit was provided to all potential claimants, in accordance with the Court's November 20, 2015 Order, Dkt. 53; Takano and Noel were the only two to opt in.  *See* Letter, at 5 n.6; *Penafiel*, 2015 WL 7736551, at *2 (fact that "no other employee ha[d] come forward" supported settlement approval).  As the sole plaintiffs, Cortes, Kono, Takano, Ramirez, and Noel will be

the only employees affected by dismissal.  Second, there is no indication of a broader pattern of

FLSA violations by defendants or a likelihood that plaintiffs' circumstances will recur.  To the

contrary, the parties represent that New Creators has "revamped its policies and procedures to

maintain accurate time records through a time recordkeeping program, has paid overtime

compensation, and has revised its gratuity policy, making recurrence of the claimants'

circumstances highly unlikely."  Letter, at 5 n.6.  Third, defendants have not previously been

accused of violations of the FLSA or the NYLL.  *Id.*  Fourth, the SAC does not appear to raise

novel factual or legal issues that would further the development of law in this area.

Finally, other considerations support approval here.  The Agreement does not contain a

confidentiality provision that would undermine the broad remedial purposes of the FLSA, and

plaintiffs are not precluded from discussing the settlement of their FLSA and NYLL claims.  *See*

*Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–81 (S.D.N.Y. 2015) (discussing why

confidentiality provisions are in tension with the remedial purposes of the FLSA).  And, although

the Agreement contains a non-disparagement provision, it includes the requisite "carve-out" for

truthful statements about plaintiffs' experience litigating this case.  *See* Agmt. ¶ 6; *Lazaro-*

*Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y.

Dec. 15, 2015) (noting that "not all non-disparagement clauses are *per se* objectionable," but that

"if the provision would bar plaintiffs from making any negative statement about the defendants,

it must include a carve-out for truthful statements about plaintiffs' experience litigating their

case") (internal quotation marks and citation omitted).  Finally, as noted, the parties have

narrowed the scope of the Agreement's release provision to limit the release of claims against

defendants and Mrs. Takahashi to the claims asserted in this action.  *See* Am. ¶¶ 1–2.

Therefore, having considered the totality of the circumstances, the Court finds the Agreement fair and reasonable.

### B.    Approval of Attorneys' Fees and Costs[4]

Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorneys' fees and costs incurred successfully prosecuting wage-and-hour actions. *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012); *see* 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant[s], and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee [under the NYLL] in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees."). "Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees." *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634–35 (S.D.N.Y. 2015); *see also Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) ("[T]he fact that [plaintiffs] prevailed through a settlement rather than through litigation does not weaken [plaintiffs'] claim to fees." (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980))).

Here, the Agreement allocates $225,000, or 33% of the total $675,000 settlement, to Florence Rostami Law, LLC ("FRL"), which represents plaintiffs in this lawsuit.[5]  Agmt. ¶ 1(b).

---

[4] Plaintiffs' counsel has submitted for *in camera* review a declaration regarding its request for attorneys' fees and costs, Rostami Decl., along with its billing records, Invoice, and an invoice for the services performed by the outside counsel which plaintiffs' counsel retained to provide legal services to plaintiffs in connection with the bankruptcy matter.  The Court references the information contained in these documents as necessary to assess the fairness and reasonableness of the fee award.

[5] This is consistent with the contingency-fee arrangement that FRL entered into with Kono, Cortes, and Ramirez.  *See* Letter, at 5.  The collective action notice informed Takano and Noel

This amount is inclusive of all costs incurred by FRL in this action ($17,981.80), including the

fees paid by FRL to outside counsel to represent plaintiffs in the bankruptcy matter ($14,715).

Letter, at 6; Rostami Decl. ¶ 5.  Accordingly, the amount allocated to FRL as attorneys' fees

($207,018.20) is less than one-third of the total settlement amount.  *See Beckert v. Rubinov*, No.

15 Civ. 1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) ("[W]hen awarding

attorneys' fees on a percentage-of-the-fund basis, the appropriate denominator is the total

settlement *net* of costs.").  This sum is consistent with "contingency fees that are commonly

accepted in the Second Circuit in FLSA cases."  *Najera v. Royal Bedding Co., LLC*, No. 13 Civ.

1767 (NGG), 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015); *see also Mohney v. Shelly's

Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5

(S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in

class action settlements in the Second Circuit.") (collecting cases).

Regardless, the Court must independently ascertain the reasonableness of the requested

fees and costs.  *See Penafiel*, 2015 WL 7736551, at *2 (citing 29 U.S.C. § 216(b) (allowing "a

*reasonable* attorney's fee") (emphasis in *Penafiel*)).

### 1.   Costs

"Attorney[s'] fees awards include those reasonable out-of-pocket expenses incurred by

attorneys and ordinarily charged to their clients."  *Rhodes v. Davis*, No. 08 Civ. 9681 (GBD),

2015 WL 1413413, at *4 (S.D.N.Y. Mar. 23, 2015) (quoting *LeBlanc–Sternberg v. Fletcher*, 143

F.3d 748, 763 (2d Cir. 1998)).  The requesting party must substantiate the request for costs.  *See

CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513 (GBD), 2012 WL 4714820, at *2

---

(along with other putative collective members) that if they joined the action, FRL would
represent them pursuant to the same arrangement.  *Id.*

(S.D.N.Y. Oct. 3, 2012) (denying reimbursement for undocumented costs).  Court fees reflected

on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides

extrinsic proof, such as invoices or receipts.  *See Abel v. Town Sports Int'l LLC*, No. 09 Civ.

10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012).  A sworn statement or

declaration under penalty of perjury that certain amounts were expended on particular items is

also sufficient.  *Id.*

Here, plaintiffs' counsel seeks $17,981.80 in disbursements.  This includes $3,266.80 in

costs incurred for filing fees, interpreter services, proofs of service, legal research, and travel to

and from court proceedings.  *See* Invoice, at 27.  To support this request, counsel submitted an

itemization of the costs incurred by FRL.  *Id.*  Having reviewed these disbursements, the Court

finds them adequately documented, reasonable, and of the type commonly reimbursed by courts

in this District.  *See, e.g.*, *Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964 (PAE), 2016 WL

452319, at *7 (S.D.N.Y. Feb. 5, 2016) (awarding $2,972.82 in costs, including court fees, courier

fees, interpreter fees, and travel expenses); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 31

(S.D.N.Y. 2015) (awarding $1,150.60 in disbursements, representing a court filing fee and

transcription, mailing, and transportation costs); *Nautilus Neurosciences, Inc. v. Fares*, No. 13

Civ. 1079 (SAS), 2014 WL 1492481, at *4 (S.D.N.Y. Apr. 16, 2014) (awarding $5,514.39 for

court fees, administrative fees, photocopying, and legal research costs).

Plaintiffs' counsel also seeks reimbursement for the $14,715 it has paid to specialized

bankruptcy counsel, Gary M. Kushner of Goetz Fitzpatrick LLP ("GF"), to represent plaintiffs in

the bankruptcy matter.  *See* Rostami Decl. ¶¶ 4–5, 23; Invoice, at 27.  To support this request,

plaintiffs' counsel submitted GF's invoice for the services it performed in that matter.  *See*

Bankruptcy Invoice.  Courts in this District have held that counsel in FLSA actions may be

reimbursed for reasonable fees and costs incurred in connection with related bankruptcy proceedings where such work is "necessary for the resolution of claims" in the FLSA lawsuit. *Lora v. J.V. Car Wash, Ltd.*, No. 11 Civ. 9010 (LLS), 2015 WL 7302755, at *6–7 (S.D.N.Y. Nov. 18, 2015) (approving reimbursement where plaintiffs' counsel provided "a detailed and uncontested account of the work they performed in the bankruptcy case and the reasons that they needed to remain involved to safeguard their clients' interests"); *see also Easterly v. Tri–Star Transp. Corp.*, 11 Civ. 6365 (VLB) (PED), 2015 WL 337565, at *10 (S.D.N.Y. Jan. 23, 2015) (awarding fees in FLSA case for time plaintiff's counsel spent "on related matters including . . . the bankruptcy of individual defendants") (adopting report and recommendation). Here, the Court agrees with plaintiffs' counsel that retaining specialty bankruptcy counsel was justified given "the complex issues facing Plaintiffs[,] . . . the interrelationship between this action and the bankruptcy proceeding," and plaintiffs' counsel's "belie[f] that the intent behind the bankruptcy filing may have been to thwart Plaintiffs' efforts to recover damages on their [FLSA and NYLL] claims." Rostami Decl. ¶ 23. Having reviewed GF's invoice, the Court finds that the time expended by outside counsel in the bankruptcy case was "reasonable and necessary to protect plaintiffs' interests in this case and to achieve a fair settlement of their claims." *Lora*, 2015 WL 7302755, at *7.

The Court, therefore, finds plaintiffs' request for costs reasonable.

### 2. Attorneys' Fees

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro–*

*North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks omitted).  As to the

reasonable hourly rate, the Court's analysis is guided by the market rate "prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and

reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The relevant community is this

District.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182,

190–91 (2d Cir. 2008).  As to the reasonableness of the number of hours billed, courts "should

exclude . . . hours that were not reasonably expended," such as where there is overstaffing or the

hours are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424,

434 (1983) (internal quotation marks and citation omitted).

Here, plaintiffs' counsel has provided contemporaneous time records that document the

work its staff performed in connection with this matter.  *See* Invoice.  The following chart

reflects each timekeeper's position and hourly rate, the hours he or she worked on this case, and

the fees generated.

| Timekeeper | Position | Hourly Rate | Hours Worked | Fees Generated |
|---|---|---|---|---|
| Neal Haber | Partner – 37 years' experience | $400 | 280.3 | $112,120.00 |
| Florence Rostami | Principal – 18 years' experience | $400 | 201.8 | $80,720.00 |
| Hiro Sugano | Paralegal | $200 | 26.7 | $5,340.00 |
| **Total** | | | 508.8 | $198,180.00 |

Mr. Haber and Ms. Rostami's claimed hourly rates are in line with the rates generally

awarded in this District to attorneys with commensurate levels of experience in employment

actions.  *See, e.g.*, *Gonzalez*, 112 F. Supp. 3d at 28 (awarding hourly rate of $450 to partner with

17 years' experience); *Patino v. Brady Parking, Inc.*, 11 Civ. 3080 (AT) (DF), 2015 WL

2069743, at *3 (S.D.N.Y. Apr. 30, 2015) (awarding hourly rate of $400 to founding partner with

13 years' experience in labor and employment law); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F.

Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (collecting cases that awarded partners hourly rates of $300–$400 in FLSA actions); *Kahlil*, 657 F. Supp. 2d at 475–76 ($400 per hour rate appropriate for attorney at small firm with 25 years' experience). However, as to Mr. Sugano, the Court finds a reduced rate of $125 appropriate for purposes of the lodestar calculation. *See Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 WL 4006896, at *8 (S.D.N.Y. July 1, 2015) ("In recent FLSA actions, hourly rates between $100 and $125 for paralegal work have been found to be reasonable."); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014) (approving hourly rate of $125 for paralegal); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133 (LGS) (FM), 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014) (reducing paralegal hourly rate to $125), *report and recommendation adopted*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).

As to the reasonableness of the number of hours expended, the Invoice, for the most part, reflects sound billing practices. It is clear that plaintiffs' counsel expended substantial time and effort litigating this action since its inception. The projects FRL undertook included (1) drafting the complaint and amended complaints; (2) opposing defendants' motion to dismiss; (3) briefing the motion for conditional certification and distributing the notice to putative class members; (4) conducting document discovery; (5) retaining specialty counsel to represent plaintiffs in the bankruptcy matter; and (6) participating in a settlement conference before the magistrate judge. The majority of hours billed by each timekeeper are not excessive, redundant, or vague, and are thus reasonable.

14

To be sure, the Court has identified inefficiencies and excessive billing practices that justify a modest reduction of the lodestar.  For example, there are multiple instances of block-billing where FRL "group[s] tasks into a single billing entry, so as to leave unclear how much time was devoted to each constituent task."  *Themis Capital v. Dem. Rep. Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *6 (S.D.N.Y. Sept. 4, 2014).  Generally, block-billing is disfavored as it impedes the court's ability to assess whether the time expended on any given task was reasonable.  *See Green v. City of New York*, 403 Fed. App'x. 626, 630 (2d Cir. 2010) (summary order); *Ramirez v. Benares Indian Rest. LLC*, No. 14 Civ. 7423 (JMF), 2015 WL 926008, at *2 (S.D.N.Y. Mar. 4, 2015) (collecting cases).  Courts have generally made reductions in block-billed hours in situations where "(1) there was reason to believe that the hours billed were independently unreasonable; (2) the block-billing involved aggregating tasks that were not all compensable; or (3) the number of hours block-billed together was so high (*e.g.*, five hours or more) as to create an unacceptable risk that the aggregated total exceeded reasonable hours worked on compensable projects."  *Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 Civ. 4968 (PAE), 2015 WL 8784211, at *14 (S.D.N.Y. Dec. 15, 2015) (citing *Adusumelli v. Steiner*, Nos. 08 Civ. 6932, 09 Civ. 4902, 10 Civ. 4549 (JMF), 2013 WL 1285260, at *4 (S.D.N.Y. March 28, 2013)).  Here, there are at least 15 such entries.  For example, on November 17, 2015, Mr. Haber billed 7.6 hours for:

> Travel to court, settlement conference before Magistrate Judge Andrew J. Peck; legal research, preparation of damage calculation spreadsheets, review with F. Rostami and H. Sugano.

Invoice, at 17.  Similarly, on January 28, 2016, he billed 6.1 hours for:

> Telephone discussion with M. Salimbene; discussion with F. Rostami; preparation of response to Interrogatories 3 and 4, per Judge Moses Order; review stipulation extending time to answer, emails from to M. Salimbene; telephone discussion

with G. Kushner.

*Id.* at 21.

Additionally, there are several entries that report hours billed that may be disproportionate to the task performed.  For instance, between July 7 and 17, 2015, Mr. Haber alone spent a total of 18.1 hours, generating $7,240 in fees, preparing, reviewing, and revising the 35-page complaint.  *See Id*. at 5–6.  While the Court does not doubt that the FRL timekeepers actually invested the amount of time recorded for each task, plaintiffs ought not to bear the costs of any undue labor.

Finally, the Invoice reflects a number of instances where multiple timekeepers performed tasks that could have been more economically accomplished by fewer attorneys.  *See Guo*, 2016 WL 452319, at *6 (reducing fee award to compensate for duplicative labor); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209–10 (E.D.N.Y. 2007) (reducing fee award where "significant overlap of efforts by multiple counsel" indicated that "greater economy of time and effort could have been achieved on a three-employee wage-and-hour case").  For instance, it is unclear why it was necessary for Mr. Haber, Ms. Rostami, and Mr. Sugano all to attend the November 17, 2015 settlement conference before Judge Peck.  *See* Invoice, at 15.

All things considered, the Court concludes that a 15% across-the-board reduction of the lodestar is warranted to redress any improper or excessive billing by FRL.  *See Green*, 403 F. App'x at 630 (recognizing the "authority of district courts to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application") (internal quotation marks and citations omitted); *Themis Capital*, 2014 WL 4379100, at *6 (applying 10% across-the-board reduction to account for staffing inefficiencies and "occasional (but far from widespread) instances of block billing[ ] or vague time entries," and 20% reduction for time

16

entries of two attorneys who engaged in frequent block billing); *Molefi v. The Oppenheimer Trust*, No. 03 Civ. 5631 (FB) (WP), 2007 WL 538547, at *8 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction to account for block-billing); *Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (overall reduction of 15% warranted based on vague descriptions of work performed).

Applying the foregoing reductions and rates yields a modified lodestar of $166,750.88, calculated as follows:

| Timekeeper | Position | Hourly Rate | Hours Worked | Fees Generated |
|---|---|---|---|---|
| Neal Haber | Partner – 37 years' experience | $400 | 280.3 | $112,120.00 |
| Florence Rostami | Principal – 18 years' experience | $400 | 201.8 | $80,720.00 |
| Hiro Sugano | Paralegal | $125 | 26.7 | $3,337.50 |
| **Total** | | | 508.8 | $196,177.50 |
| **Less 15% Reduction** | | | 432.48 | $166,750.88 |

The $207,018.20 fee award allocated by the settlement ($225,000 less $17,981.80 in costs) would represent a 1.24 multiplier of the modified lodestar. Having considered (1) the quality of the representation, (2) the magnitude of the settlement award, (3) the time and effort plaintiffs' counsel spent litigating this action and securing settlement, and (4) the considerable risk involved with taking this case on a contingency fee basis, the Court finds this award fair, reasonable, and in line with fees routinely approved in this District. *See Sakiko*, 58 F. Supp. 3d at 439 (awarding 2.28 multiplier from modified lodestar calculation and noting that "multiplier near 2 compensates [plaintiffs' counsel] appropriately" for "the risk associated with contingent fees in FLSA cases"); *Lizondro-Garcia*, 2015 WL 4006896, at *10–12 (finding "award of $105,000 or one-third of the fund—a 1.68 multiplier of the lodestar calculation and a 1.52 multiplier of plaintiffs' counsel's stated hourly rates"—reasonable in light of quality of counsel,

17

time and labor expended, risks of litigation, and litigation's magnitude and complexity); *Hart*, 2015 WL 5577713, at *14 (finding multiplier of 1.08 to be "quite low relative to the multipliers in many cases in which fees have been approved in this District"); *Trinidad*, 2014 WL 4670870, at *12 (concluding that multiplier of 1.82 gave class counsel "ample credit for the effort and risk involved in" FLSA and NYLL class action).  In reaching this conclusion, the Court is mindful, too, that, after the Court's approval of the Agreement, plaintiffs' counsel will likely be required to expend additional time and effort—in connection with both enforcing the settlement and the bankruptcy matter—for which it will receive no further compensation. *See* Letter, at 6.

The Court, therefore, finds the Agreement's provision for attorneys' fees fair and reasonable.

## CONCLUSION

For the foregoing reasons, the Court approves the parties' settlement agreement, pursuant to which Cortes is to receive $174,478.51, Kono is to receive $113,589.89, Takano is to receive $63,799.37, Ramirez is to receive $52,086.40, Noel is to receive $46,045.83, and plaintiffs' counsel is to receive $225,000.  This action is hereby dismissed with prejudice, and the Clerk of Court is respectfully directed to close this case.


SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge


Dated: June 20, 2016
       New York, New York